UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**CARLTON XAVIER MATHEWS,**
**D.O.C. #J27519**

    **Plaintiffs,**

v.    Case No. 4:22-cv-283-WS-MAF

**OFFICER J. RUDD**
**and NURSE HELMLINGER,**

    **Defendants.**
_____/

**DEFENDANT RUDD'S MOTION FOR SUMMARY JUDGMENT**

Defendant, Officer Rudd, by and through the undersigned counsel, pursuant to Rule 56(c), FRCP, and per the Court's Order dated January 18, 2023 [Doc. 22], hereby moves this Court to enter summary judgment in his favor as to the claims in Plaintiff's Second Amended Complaint, stating the following:

    **I.**    **INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff is an inmate currently incarcerated with the Florida Department of Corrections ("FDC"). In his Second Amended Complaint, Plaintiff brings the following claims:

- Count I - § 1983 Deliberate Indifference; against Officer Rudd and Nurse Helmlinger.

1

- Count II - § 1983 Excessive Force; against Officer Rudd only.

Plaintiff filed two grievances against Officer Rudd but made no allegations of physical abuse or excessive force in those grievances. Plaintiff thus failed to exhaust his administrative remedies with regard to those allegations and the claim of excessive force in Count II. As for the remaining allegations and the claim of deliberate indifference in Count I, Plaintiff has failed to state a claim upon which relief may be granted, and Officer Rudd is entitled to qualified immunity as a matter of law.

## II. STATEMENT OF FACTS

### A. Grievance procedures of the Florida Department of Corrections.

FDC grievance policies are codified in Rule 33-103, Florida Administrative Code ("FAC"). The purpose of the policies is outlined in Rule 33-103.001(1), which states:

> *The purpose of the grievance procedure is to provide an inmate with a channel for the administrative settlement of a grievance. In addition to providing the inmate with the opportunity of having a grievance heard and considered, this procedure will assist the department by providing additional means for internal resolution of problems and improving lines of communication. This procedure will also provide a written record in the event of subsequent judicial or administrative review.*

Despite this broadly stated purpose, not every concern can be resolved through the grievance process. Rule 33-103.001(4)-(5), FAC lists the approved and disapproved matters that can be resolved through grievance.

> *(4) Inmates can file complaints regarding the following matters:*
> *(a) The substance, interpretation, and application of rules and procedures of the department that affect them personally;*
> *(b) The interpretation and application of state and federal laws and regulations that affect them personally;*
> *(c) Reprisals against inmates for filing a complaint or appeal under the inmate grievance procedure, or for participating in an inmate grievance proceeding;*
> *(d) Incidents occurring within the institution that affect them personally;*
> *(e) Conditions of care or supervision within the authority of the Florida Department of Corrections, except as noted herein.*
>
> *(5) Inmates cannot file complaints regarding the following matters:*
> *(a) The substance of State and federal court decisions;*
> *(b) The substance of State and federal laws and regulations;*
> *(c) Parole decisions;*
> *(d) Other matters beyond the control of the department.*

There are two types of grievances allowed under FDC procedure, formal and informal. In most instances, inmates are required to utilize the informal grievance process, which Plaintiff did in this case. The requirements for filing an informal grievance are outlined in Rule 33-103.005, FAC, which states in part:

> *2. When completing the inmate request form for submission as an informal grievance, the inmate shall ensure that the form is legible, that*

> *included facts are accurately stated, and that only one issue or complaint is addressed.*

Rule 33-103.005(2)(b)2, FAC.

Once the inmate submits his grievance, it is processed by designated staff at the correctional institution and forwarded to the appropriate department for a response. Rule 33-103.005(1)(a), FAC. The recipient must then either approve, deny, or return the grievance without action. Rule 33-103.005(4)(b), FAC.

An inmate's grievance may be returned without action for numerous reasons. These are outlined in Rule 33-103.014(1)(a)-(y), which states in part:

> *(1) The informal grievance, formal grievance, direct grievance, or grievance appeal, hereafter referred to as "grievance," may be returned to the inmate without further processing if, following a review of the grievance, one or more of the following conditions are found to exist. The reasons listed below are the only reasons for returning a grievance without a response on the merits.*
> *…*
> *(v) The inmate is using the grievance process to ask questions or seek information, guidance or assistance.*

**B. In his Complaint, Plaintiff alleges that Officer Rudd used excessive force and physically abused him.**

This case arises from an incident that occurred on or about September 13, 2020[1] involving Plaintiff and multiple health and security staff, among them Nurse Helmlinger and Officer Rudd. Plaintiff claims that while in his cell at Franklin

---

[1] While Plaintiff alleges in his Second Amended Complaint that this incident occurred on September 13, 2020, in his grievances he claimed it occurred on September 18, 2020.

Correctional Institution, he tied a sheet around his neck, stood on his cell sink, and threatened to commit suicide. *Second Amended Complaint, ¶1*. Plaintiff admits that Officer Rudd acted quickly to prevent Plaintiff from harming himself and escorted him to medical for evaluation without delay. *Id., ¶1-2*. Plaintiff was evaluated by Nurse Helmlinger. *Id.* During the evaluation, Plaintiff told the nurse that he was "depressed, suicidal, and homicidal." *Id.* In response to these admissions, Nurse Helmlinger recommended he be placed on "strip" status to protect his physical safety. *Id.*

The gravamen of the complaint against Officer Rudd is what allegedly occurred after Plaintiff was escorted back to his cell. Plaintiff alleges that Officer Rudd violently pushed Plaintiff into his cell, punched Plaintiff in his stomach twice in an uppercut motion, then punched Plaintiff on the left side of his face using handcuffs as makeshift brass knuckles, knocking Plaintiff out for several hours. *Id., ¶5*. Finally, Plaintiff claims that while he was unconscious, Officer Rudd inserted a metal foreign object in his rectum, causing an internal laceration. *Id., ¶6*.

**C. Although he filed two grievances against Officer Rudd, Plaintiff made no allegation of excessive force or physical abuse in his grievances.**

Plaintiff filed two grievances against Officer Rudd and Nurse Helmlinger in connection to the incident at issue in his complaint. The first was filed on September 22, 2020 and alleged that the Franklin staff acted with deliberate indifference by

5

allowing Plaintiff to be placed on strip status. *Exhibit 1, Sept. 22, 2023 Informal Grievance.* Plaintiff's grievance mentions that Officer Rudd stopped his suicide attempt and threatened to utilize OC spray. *Id.* It makes no mention of the shocking allegations of physical abuse and excessive force described in the Complaint. *Id.* This grievance was denied. *Id.* Plaintiff subsequently appealed, which was also denied. *Exhibit 2, Appeal of Sept. 22, 2023 Informal Grievance.*

Plaintiff's second grievance was filed on September 23, 2023. *Exhibit 3, Sept. 23, 2023 Informal Grievance.* This grievance briefly summarized Plaintiff's complaints from his September 22, 2023 grievance, but concluded with a request that the institution preserve footage from the fixed wing video cameras. *Id.* Again, Plaintiff made no allegations of physical abuse or excessive force. *Id.* This grievance was returned without action for violating Rule 33-103.014(1)(v), or using the grievance process to seek guidance or assistance. *Id.*

Upon information and belief, Plaintiff did not make allegations of physical abuse or excessive force against Officer Rudd in any grievance filed with FDC. Plaintiff admitted this in his responses to Defendant Rudd's Request for Admissions dated February 10, 2023. *Exhibit 4, Plaintiff's RFA Responses.*

7. Admit that your grievance filed September 22, 2020, did not allege that Officer Joseph Rudd physically assaulted you.

ADMIT: √   DENY: _____

**Explanation:**

Didn't feel it's was necessary since I had filed grievance about the strip cell incident.

11. Admit that your grievance filed September 23, 2020, did not allege that Officer Rudd physically assaulted you.

ADMIT: √   DENY: _____

**Explanation:**

See page five

Note that "see page five" is in reference Plaintiff's response to Request 7 above.

16. Admit that you did not exhaust the administrative remedies available to you with regard to the allegation that Officer Rudd assaulted you.

**ADMIT:** ✓    **DENY:** _____

**Explanation:**

_I filed on the strip_

In his responses, Plaintiff also admitted that he had the required knowledge and ability to file such a grievance, had he chosen to do so. *Exhibit 4, Plaintiff's RFA Responses, Requests 2-4.* He simply "didn't feel it was necessary." *Exhibit 4, Plaintiff's RFA Responses, Request 7.* Why Plaintiff did not feel it was necessary to notify FDC of such heinous allegations is unknown.

Exhibits 1 – 3 were provided by FDC to Defendant Rudd with Plaintiff's HIPAA protected information redacted. An affidavit of completeness from an FDC official is attached. *Exhibit 5.*

## MEMORANDUM OF LAW

### III.   STANDARD OF REVIEW

A motion for summary judgment should be granted when the moving party shows that "…there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted); *Fed. R. Civ. P. 56(c)*. Exhaustion of administrative remedies is a question of law that may be decided by the court upon a motion by a defendant. *Brown v. Sikes*, 212 F.3d 1205 (11th Cir. 2000).

An otherwise correctly supported motion for summary judgment cannot be defeated simply due to the existence of some factual disputes between the parties. The precise requirement is that there be "no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party asserting that a fact is genuinely disputed must support the assertion by citing to specific materials in the record. Failure to do so allows the court to consider the facts as undisputed for summary judgment. Fed. R. Civ. P. 56(c)(1)(A), (e)(2)). "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice" to demonstrate a material issue of genuine fact that precludes summary judgment. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990) (quoting *Anderson*, 477 U.S. at 242).

### IV. ARGUMENT

**A. § 1997(e) requires that Plaintiff exhaust his administrative remedies prior to filing suit.**

Plaintiff must exhaust the administrative remedies available to him at the state level before filing suit. 42 U.S.C. § 1997e(a). To properly exhaust administrative

Case 4:22-cv-00283-WS-MAF   Document 30   Filed 03/31/23   Page 10 of 15

remedies, Plaintiff must "complete the administrative review process in accordance with the applicable procedural rules." *Jones v. Bock*, 549 U.S. 199, 218 (2007), citing *Woodford v. NGO*, 548 U.S. 81, 88 (2006). It is FDC requirements that define the boundaries of proper exhaustion. *Id.*

**B. Plaintiff did not exhaust his administrative remedies with regard to his allegations of excessive force and physical abuse.**

While FDC rules do not specify the level of detail an inmate must provide to have a valid grievance, it is clear that the inmate must at a minimum make the allegation in order for it to be addressed by the grievance process. Rule 33-103.001(1), 103.005(2)(b)2, FAC. As Chief Judge Hinkle noted in 2005, "there is undoubtedly a threshold level of information an inmate must provide in the administrative process in order to meet the federal exhaustion requirement. This is so because, if an inmate was not required to provide enough information to allow prison officials to investigate the inmate's real complaint, the purposes for which Congress adopted the exhaustion required would not be met." *Goldsmith v. White*, 357 F. Supp. 2d 1336 (N.D. Fla. 2005). At a minimum, the inmate's grievance must alert prison officials to a problem. *Jones* at 219.

Here, Plaintiff's grievances made no mention of Officer Rudd's alleged excessive force and physical abuse, even by implication or in passing. Plaintiff did not exhaust his administrative remedies with respect to these claims. He took no

10

steps to alert FDC of these issues. For this reason, these allegations and Count II of Plaintiff's Second Amended Complaint should be dismissed.

### C. The deliberate indifference allegations in Plaintiff's Complaint fail to state a claim upon which relief can be granted.

To establish a § 1983 claim for violation of an inmate's Eighth Amendment rights, the plaintiff must show sufficient evidence of:

1. A substantial risk of serious harm;

2. The defendant's deliberate indifference to that harm; and

3. Causation of an injury.

*Farmer v. Brennan*, 511 U.S. 825 (1994).

Plaintiff's allegations in Count I fail to meet the second element on their face. The United States Supreme Court has defined "deliberate indifference" to mean "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer* at 837. This analysis contains both subjective and objective components. *Mosley v. Zachery*, 966 F.3d 1265, 1270 (11th Cir. 2020). Plaintiff must allege that the Officer Rudd actually (subjectively) knew that he faced a substantial risk of serious harm and that he disregarded that known risk by failing to respond to it in an (objectively) reasonable manner. *Bowen v. Warden, Baldwin State Prison*, 826 F.3d 1312 (11th Cir. 2016) at 1320. If a prison official knew of a substantial risk to inmate safety, he may be found free from liability if he responded reasonably to the risk. *Farmer* at 844.

Alleging that Officer Rudd behaved in a negligent or even civilly reckless manner is not enough to meet the deliberate indifference standard. *Mosley* at 1276. "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Id. citing Bowen* at 1320. Rather, Plaintiff must show not only that there was a substantial risk of serious harm, but also that Officer Rudd "subjectively knew of the substantial risk of serious harm and that [he] **knowingly or recklessly disregarded that risk.**" *Goodman v. Kimbrough*, 718 F.3d 1325 (11th Cir. 2013) [emphasis added].

Here Plaintiff concedes that Officer Rudd responded to his threats of suicide, self-harm, and homicide, but disagrees with the action taken. He admits that Officer Rudd timely intervened to keep Plaintiff from harming himself and had Plaintiff immediately evaluated by the on-site medical staff. Officer Rudd then complied with the recommendations of the medical staff by placing Plaintiff in an environment where he was unable to harm himself or others. This course of action was objectively reasonable, and certainly does not rise to the level of knowing and reckless disregard that is required to show deliberate indifference. If there was any risk of substantial serious harm to Plaintiff in this case, Officer Rudd did not disregard it. Count I of the Second Amended Complaint should therefore be dismissed.

### D. Officer Rudd is entitled to qualified immunity.

The Court must utilize a two-part framework to evaluate qualified immunity claims. *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010). The two stages of inquiry are (1) whether the plaintiff's allegations, if true, amount to a constitutional violation, and (2) whether the constitutional right was "clearly established." *Id.*

This defense protects government officials performing discretionary functions, allowing them to do so without the fear of personal liability or harassing litigation. It protects from suit all but the plainly incompetent or those that knowingly violated federal law. *Gonzalez v. Reno*, 325 F.3d 1228, 1230 (11th Cir. 2002). Qualified immunity is an entitlement to not stand trial or face the burdens of litigation. *Gonzalez* at 1230

As outlined above, Officer Rudd did not violate Plaintiff's clearly established constitutional right as understood by *Farmer*. This case is precisely the kind qualified immunity is designed to protect against. Plaintiff is claiming that correctional officers and nurses took discretionary action to secure his safety, but disagrees with the type of action taken. Officer Rudd acted reasonably, and ultimately Plaintiff was unable to harm himself or others.

The United State Supreme Court has recognized that prison officials have professional expertise regarding maintaining our country's prisons. *Bell v. Wolfish*,

13

441 U.S. 520, 99 S. Ct. 1861, 547-48 (1979). "Courts should ordinarily defer to their expert judgment in such matters." *Id.* In his Complaint, Plaintiff is asking the Court to second-guess the actions of correctional officers and institution nurses taken to address Plaintiff's threats of self-harm and violence. Plaintiff has failed to meet the standard required to overcome qualified immunity. Count I of the Second Amended Complaint should therefore be dismissed.

WHEREFORE, Defendant Rudd respectfully requests this Court enter final summary judgment in his favor as to Counts I and II of Plaintiffs' Second Amended Complaint, and grant such other relief as the Court deems proper.

Respectfully submitted,

*/s/ Liane S. LaBouef*
Liane S. LaBouef, Esq.
Florida Bar No. 1025198
Howell, Buchan & Strong
2898-6 Mahan Drive
Tallahassee, Florida 32308
Telephone: (850) 877-7776
Email: liane@jsh-pa.com
*Attorney for Defendant*
*Officer Rudd*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

Undersigned counsel hereby certifies that this motion and incorporated memorandum of law contains 2,583 words, excluding the case style, signature block, image excerpts from Exhibit 4, and certificate of service. The foregoing word count has been calculated utilizing Microsoft Word, the word processing software used to prepare this motion and incorporated memorandum of law. The word count of this motion has complied with procedure required by Local Rule 5.1 and Local Rule 7.1.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was served via U.S. mail to Plaintiff at Santa Rosa Correctional Institution, 5850 E. Milton Rd., Milton, FL 32583, this 31st day of March 2023.

/s/ *Liane S. LaBouef*
Liane S. LaBouef