# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**CARLTON XAVIER MATHEWS,**
**D.O.C. # J27519,**

      **Plaintiff,**

**vs.**                          **Case No. 4:22cv283-WS-MAF**

**OFFICER J. RUDD,**
**and NURSE HELMLINGER,**

      **Defendants.**
_____/

## ORDER and REPORT AND RECOMMENDATION

This civil rights case was filed by Plaintiff Carlton Xavier Mathews in late July 2022 pursuant to 42 U.S.C. § 1983.  ECF No. 1.  Plaintiff has "three strikes" and paid the filing fee at case initiation.  ECF No. 2.

He ultimately filed a second amended complaint [hereinafter "complaint"], ECF No. 8, on August 31, 2022, which was served on the two named Defendants.  Defendant Helmlinger filed a motion to dismiss, ECF No. 19, and Plaintiff was directed to file a response to that motion.  ECF No. 20.  Plaintiff responded, ECF No. 27, and that motion is ready for a ruling.

Defendant Rudd filed an answer with affirmative defenses.  ECF No. 18.  An Order was entered advising the Defendant to either appropriately support the affirmative defense of exhaustion of administrative remedies or withdraw it.  ECF No. 20.  In response, Defendant Rudd filed a motion, ECF No. 30, which was titled as a motion for summary judgment, but which has been construed only as a motion to dismiss.  ECF No. 34.  Plaintiff was given notice of his obligation to respond, ECF No. 34, and he filed a response on May 1, 2023, ECF No. 35, followed by a supplemental response, ECF No. 37.  Defendant Rudd's motion is also considered in this Report and Recommendation.

Plaintiff also filed a successive motion for appointment of counsel, ECF No. 36, with his supplemental response.  Plaintiff contends that he needs counsel to represent him because he has been required to show he exhausted administrative remedies.  ECF No. 36.  He contends that such a requirement provides an exceptional circumstance warranting the appointment of counsel.  *Id.*

Plaintiff has not been placed in an unfair or prejudicial position in being required to respond to a motion to dismiss which argues that he did not exhaust his available administrative remedies.  Indeed, the complaint

form used in this Court includes a warning to Plaintiff that the "PLRA

requires that prisoners exhaust all available administrative remedies."  ECF

No. 8 at 11.  It includes a warning in bold lettering: "If you did not exhaust

available remedies prior to filing this case, this case may be dismissed."  *Id.*

Demonstrating that Plaintiff complied with the Department of Corrections'

grievance process does not require the appointment of counsel.  Plaintiff's

motion, ECF No. 36, is denied.

## Allegations of the Second Amended Complaint, ECF No. 8

In September 2020, Plaintiff was housed at Franklin Correctional

Institution.  ECF No. 8 at 5.  He alleged that he had threatened to commit

suicide and was standing on his cell sink with a sheet tied around his neck.

*Id.*  Defendant Rudd, a correctional officer at the Institution, approached the

cell and asked Plaintiff what he was doing.  Plaintiff replied, "I don't want to

live no more."  *Id.*  Defendant Rudd opened his OC spray and threatened

"to pepper spray Plaintiff."  *Id.*  It appears that the threat was not carried

out, and several minutes later, Defendant Rudd escorted Plaintiff to

medical.  *Id.* at 5-6.

Plaintiff was given a psychological evaluation by Defendant

Helmlinger, a nurse at Franklin C.I.  *Id.* at 6.  She tried to counsel with

Plaintiff, but he told her he did not want to talk. *Id.* She told Plaintiff he would just be "placed on strip."[1] Plaintiff then began to speak with her, saying he was depressed, suicidal, and homicidal, but she said she need "more . . . to go on." *Id.* at 6. After five minutes of talking with her, Plaintiff said he "became exhausted" in "going back and forth with Nurse Helmlinger because he already knew what the problem was" - that no "self-harm cell" was available. *Id.* at 7. He believed she was "finding excuses to deny him self-harm placement." *Id.* at 6-7. "Nurse Helmlinger became belligerent and ordered Officer Rudd to have Plaintiff placed on strip." *Id.* at 7.

Plaintiff was escorted back to his cell by another officer and he was ordered "to strip down to his boxer shorts." ECF No. 8 at 7. Plaintiff contends he was "reluctant to do so because officers were placing him on strip for no reason." *Id.* At that time, Defendant Rudd approached and asked Plaintiff if he was giving the officer a hard time. *Id.* When Plaintiff began "to protest," Defendant Rudd pushed him inside the cell. Plaintiff then turned and cursed Defendant Rudd, who responded by punching

---

[1] A phrase generally understood to indicate a prisoner would be placed in a cell and stripped of property such as sheets, blanket, clothes, and other personal property.

Plaintiff in the stomach and the side of his face.  *Id.* at 7-8.  Plaintiff alleged

that he was knocked unconscious and woke up later to find he was "butt

naked with a metal object up his ass."  *Id.*  He claimed the metal object

caused a laceration, and he also suffered swelling and a laceration to the

side of his face.  *Id.*

He also alleged that he was put in the strip cell for five days.  ECF

No. 8 at 9.  He said that he was freezing cold without bedding material

because of the Institution's "climate control" system.  *Id.*  He said he was

not even given toilet paper.  *Id.*

Plaintiff asserts an Eighth Amendment excessive force claim against

Defendant Rudd, and a deliberate indifference claim against both

Defendants "by placing him in a strip cell."  *Id.* at 10.  As relief, he seeks

two hundred thousand dollars in compensatory damages and the same

amount in punitive damages against each Defendant.  *Id.*

**Standard of Review**

Both Defendants have argued that Plaintiff's complaint fails to state a

claim against them.  ECF No. 19 at 3; ECF No. 30 at 11.  The issue of

whether a complaint should be dismissed pursuant to Fed. R. Civ. P.

12(b)(6) for failing to state a claim upon which relief can be granted is

whether the plaintiff has alleged enough plausible facts to support the claim

stated.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167

L. Ed. 2d 929 (2007).  "To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct.

1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 570,

127 S. Ct. 1955).[2]  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678,

129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. at 1965);

see also Wilborn v. Jones, 761 F. App'x 908, 910 (11th Cir. 2019).  "The

plausibility standard" is not the same as a "probability requirement," and

"asks for more than a sheer possibility that a defendant has acted

unlawfully."  Iqbal, 556 U.S. at 677 (quoting Twombly, 550 U.S. at 556).  A

complaint that "pleads facts that are 'merely consistent with' a defendant's

---

[2] The complaint's allegations must be accepted as true when ruling on a motion to dismiss, Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), cert. denied, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations."  Twombly, 127 S. Ct. at 1965, (quoting Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)).

liability," falls "short of the line between possibility and plausibility."  Iqbal,

129 556 U.S. at 677 (quoting Twombly, 550 U.S. at 557).

The pleading standard is not heightened, but flexible, in line with Rule

8's command to simply give fair notice to the defendant of the plaintiff's

claim and the grounds upon which it rests.  Swierkiewicz v. Sorema, 534

U.S. 506, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002) ("Rule 8(a)'s

simplified pleading standard applies to all civil actions, with limited

exceptions.").  Pro se complaints are held to less stringent standards than

those drafted by an attorney.  Wright v. Newsome, 795 F.2d 964, 967 (11th

Cir. 1986) (citing Haines v. Kerner, 404 U.S. 519, 520-521, 92 S. Ct. 594,

596, 30 L. Ed. 2d 652 (1972)).  Nevertheless, a complaint must provide

sufficient notice of the claim and the grounds upon which it rests so that a

"largely groundless claim" does not proceed through discovery and "take

up the time of a number of other people . . . ."  Dura Pharmaceuticals, Inc.

v. Broudo, 544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005)

(quoted in Twombly, 550 U.S. at 558).

**Defendant Helmlinger**

Defendant contends that Plaintiff has "failed to plead deliberate

indifference" against her.  ECF No. 19 at 3.  Defendant states that Plaintiff's

claim is based on her "alleged inability to correctly diagnose his suicidal

tendency," and argues that because Plaintiff did not allege that he

attempted suicide after being seen by Defendant Helmlinger, his claim

must fail.  *Id.* at 4-5.  She further argues that Plaintiff's claim is also based

on his disagreement with her "course of treatment" which is insufficient.  *Id.*

at 5.  Further, to the degree that Plaintiff's claim is simply on a "more

should have been done" contention, Defendant argues that the claim must

fail under Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251

(1976).  *Id.* at 6.

    In response, Plaintiff argues that Defendant Helmlinger lacked proper

medical judgment to diagnose his "psychological state of being."  ECF No.

23 at 1-2.  He claims she was deliberately indifferent to his need for

medical care by directing his placement on strip.  *Id.* at 1-2.  He further

claims that she was responsible for his living conditions on strip which

amounted to cruel and unusual punishment.  *Id.* at 2.  Plaintiff claims that

by denying his request to be placed in a "self-harm cell," Defendant

Helmlinger was deliberately indifferent to a risk of harm.  *Id.* at 3.

    The Eighth Amendment governs the conditions under which

convicted prisoners are confined and the treatment they receive while in

prison.  Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  The Eighth Amendment guarantees that prisoners will not be "deprive[d] ... of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981) (quoted in Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004)).  "[B]asic human necessities include food, clothing, shelter, sanitation, medical care, and personal safety."  Harris v. Thigpen, 941 F.2d 1495, 1511 (11th Cir. 1991) (cited in Collins v. Homestead Corr. Inst., 452 F.App'x 848, 850-851 (11th Cir. 2011)).

Deliberate indifference to serious medical needs of prisoners violates the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).  "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (quotations omitted) (quoted in Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011)).  "In either of these situations, the medical need must be 'one that, if left unattended, 'pos[es] a substantial risk of serious harm.'"  Farrow, 320 F.3d at 1243

(citation omitted); *see also* <u>Mann v. Taser Intern., Inc.</u>, 588 F.3d 1291, 1307 (11th Cir. 2009).  Alternatively, "a serious medical need is determined by whether a delay in treating the need worsens the condition" or "if left unattended, poses a substantial risk of serious harm."  <u>Mann v. Taser Intern., Inc.</u>, 588 F.3d 1291, 1307 (11th Cir. 2009) (citations omitted).

Deliberate indifference requires more than negligence,[3] but it is unnecessary to show a defendant intended to cause harm.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978, 128 L. Ed. 2d 811 (1994).  Deliberate indifference requires a plaintiff to show that a defendant was subjectively reckless and consciously disregarded a substantial risk of serious harm.  <u>Wilson v. Seiter</u>, 501 U.S. 294, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (explained in <u>Farmer</u>, 511 U.S. at 838-40, 114 S. Ct. at 1979-80).  "The inadvertent or negligent failure to provide adequate medical care 'cannot be said to constitute 'an unnecessary and wanton infliction of pain.'"  <u>Estelle</u>, 429 U.S. at 105-06, 97 S.Ct. 285 (quoted in <u>Farrow</u>, 320 F.3d at 1243).

---

[3] "Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all."  <u>Bingham</u>, 654 F.3d at 1176 (citing <u>Brown v. Johnson</u>, 387 F.3d 1344, 1451 (11th Cir. 2004)).

In a claim for the denial of medical care, a plaintiff must show: "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts."  Taylor v. Adams, 221 F.3d 1254 (11th Cir. 2000), cert. denied, 531 U.S. 1077 (2001); Farrow, 320 F.3d at 1243. Put another way, to show a defendant acted with deliberate indifference, "a prisoner must show the prison official's: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence.'"  Bingham, 654 F.3d at 1176 (quoting Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999)).

 "However, not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' " McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999) (citation omitted) (quoted in Farrow, 320 F.3d at 1243).  For example, medical malpractice does not constitute deliberate indifference.  Estelle, 429 U.S. at 106, 97 S. Ct. at 292.  "Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment."  Harris v.

Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (citing Waldrop v. Evans,

871 F.2d 1030, 1033 (11th Cir. 1989)).  "A 'complaint that a physician has

been negligent in diagnosing or treating a medical condition does not state

a valid claim of medical mistreatment under the Eighth Amendment.'"

Estelle, 429 U.S. at 106, 97 S.Ct. at 292 (quoted in Bingham, 654 F.3d at

1176).  For example, the prisoner in Estelle received treatment for his back

injury, but complained that more should have been done in the way of

diagnosis.  The Court rejected this as a basis for liability:

> But the question whether an X-ray--or additional diagnostic
> techniques or forms of treatment--is indicated is a classic
> example of a matter for medical judgment.  A medical decision
> not to order an X-ray, or like measures, does not represent
> cruel and unusual punishment.

429 U.S. at 107, 97 S. Ct. at 293.  Put simply, an "official acts with

deliberate indifference when he or she knows that an inmate is in serious

need of medical care, but he fails or refuses to obtain medical treatment for

the inmate."  McElligott, 182 F.3d at 1255 (citations omitted).

    Here, Plaintiff contends that Nurse Helmlinger was deliberately

indifferent because she directed his placement on strip.  First, Plaintiff had

not requested medical care, but was taken to medical after he was seen

with a sheet tied around his neck.  Plaintiff's own allegations reveal that he

was uncooperative and unwilling to talk with her, but he told her that he "was depressed, suicidal, and homicidal." *See* ECF No. 8 at 6. Plaintiff has argued that he "was not placed in a Shos (or self-harm) cell," *see* ECF No. 35 at 4, but he acknowledges that he was placed on "strip." Thus, Nurse Helmlinger took precautions to ensure Plaintiff could not hurt himself. That action was not deliberate indifference; rather, a purposeful action was taken to protect a suicidal inmate. Plaintiff's Eighth Amendment claim for deliberate indifference is insufficient.

To the degree Plaintiff further claimed that the nurse was responsible for his living conditions on "strip," and that those conditions amounted to cruel and unusual punishment, that claim is also insufficient. "A prisoner challenging the conditions of his confinement must, among other things, 'show a deprivation that is objectively, sufficiently serious, which means that the defendants' actions resulted in the denial of the minimal civilized measure of life's necessities.'" Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996) (quotations omitted) (quoted in O'Connor v. Kelley, 644 F. App'x 928, 931-32 (11th Cir. 2016) (concluding inmate "stated no plausible Eighth Amendment claim based on the time he spent on strip-cell status"). "The challenged condition must be 'extreme'": the prisoner must show, at

the very least, 'that a condition of his confinement poses an unreasonable

risk of serious damage to his future health or safety.'" Chandler v. Crosby,

379 F.3d 1278, 1289 (11th Cir. 2004) (quotation omitted) (quoted in

O'Connor, 644 F. App'x at 932.  Plaintiff did not allege "extreme" conditions

caused by his placement on strip.  Although he was deprived of his

personal property for five days, that minimal period of time is not "extreme."

Indeed, the removal of a prisoner or detainee's property to prevent self

harm is a typical and accepted response by jail and prison officials.  *See*

Gish v. Thomas, 516 F.3d 952, 955 (11th Cir. 2008) (noting "the detainee

had been stripped of his belt, shoelaces, the contents of his pockets, and

all implements that could foreseeably be used by him to commit suicide");

Cagle v. Sutherland, 334 F.3d 980, 984 (11th Cir. 2003) (removed items of

personal property in an effort to prevent self-harm); McMahon v. Beard,

583 F.2d 172, 175 (5th Cir. 1978) (sheriff "was justified" in imposing "strip"

conditions on plaintiff prisoner whose life was saved by jailer after prisoner

tried to hang himself with a bed sheet).

There are numerous cases which have held that "that short periods of

confinement without a bed or blanket where the conditions are temporary

and the inmate suffers no physical harm therefrom, do not violate the

Eighth or Fourteenth Amendments." Whitaker v. Ferguson, No.
421CV00207CDLMSH, 2022 WL 175331, at *4 (M.D. Ga. Jan. 19, 2022)
(citing to Fischer v. Ellegood, 238 F. App'x 428, 433 (11th Cir. 2007)
(requiring inmates to sleep on the "bare cement floor" without a mattress
for five days is not unconstitutional); McMahon, 583 F.2d at 175 (no
constitutional violation when a pretrial detainee was placed nude in a "strip
cell" for up to three months, "without mattress, sheets, or blankets," after
attempting suicide); Turner v. Warden, GDCP, 650 F. App'x 695, 701 (11th
Cir. 2016) (prisoner placed in "strip cell for ten days without clothing" did
not show the condition rose to the "level of cruel and unusual deprivation").
The deprivation of property for a five day period of time was short,
temporary, and not unconstitutional as Plaintiff had threatened to commit
suicide. Moreover, Plaintiff alleged no harm by his placement on strip.

Indeed, the only possible harm was that Plaintiff claimed he was left
with only his boxer shorts and was freezing. ECF No. 8 at 5. He said he
"was so cold he thought he would [become] hypothermic and die." *Id.* at 9.
In O'Connor v. Kelley, the Eleventh Circuit accepted the plaintiff's
allegation that he was "uncomfortably cold while on strip-cell status." 644
F. App'x at 932. However, the Court found his claim insufficient because

he "alleged no facts demonstrating his exposure was to 'extreme' conditions." *Id.* The same deficiency exists with Plaintiff's claim in this case. Plaintiff provided no details about the actual temperature of his cell, the temperature setting of the "climate control" system of the institution, or the relative temperature outside.[4] *Id.* He did not provide sufficient allegations to support this claim and show that the conditions of his 5-day placement on strip was unconstitutional.

Finally, Plaintiff complained that he was on strip for "five days without nothing, including no toilet paper." ECF No. 8 at 9. The complaint alleged that when Plaintiff was placed on strip, he was to have "no mattress, clothes, sheets, blanket, or personal property." *Id.* at 7; *see also id.* at 8. There was no allegation that a Defendant ordered that Plaintiff not be provided with toilet paper. Thus, that appears to be incidental issue and there is no allegation that Plaintiff could not have asked any correctional officer for toilet paper. The motion to dismiss, ECF No. 19, filed by

---

[4] The date of the alleged incident was September 13, 2020, at Franklin Correctional Institution, in Carrabelle, Florida. ECF No. 8 at 5. Judicial notice is taken that the high temperature that day was 90 degrees, with a low of 75 degrees, in Tallahassee, Florida, just a little over 50 miles away. That is nowhere near freezing.

Defendant Helmlinger should be granted because Plaintiff's complaint fails to state a claim against her.

**Defendant Rudd**

Plaintiff also alleged a deliberate indifference claim against Defendant Rudd. ECF No. 8 at 5, 8, and 10. For the same reasons Plaintiff's claim against Defendant Helmlinger was insufficient concerning the conditions of confinement claim, Plaintiff's claim is also insufficient as to Defendant Rudd. The removal of property for five days and placing him on "strip" did not violate the Constitution.

However, Plaintiff also alleged an excessive force claim against Defendant Rudd. ECF No. 8 at 10. As to that claim, Defendant has raised the affirmative defense of exhaustion of administrative remedies, ECF No. 30, and has supported it with several exhibits, ECF No. 31. Defendant argues that Plaintiff filed grievances concerning the actions of Defendants Rudd and Helmlinger in putting him on strip status. ECF No. 30 at 5-6. However, Plaintiff made no mention of Defendant Rudd's use of physical force against him. *Id.* at 6.

**Exhaustion**

"In an effort to address the large number of prisoner complaints filed in federal court, Congress enacted the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71, as amended, 42 U.S.C. § 1997e, et seq." Jones, 549 U.S. at 202, 127 S. Ct. at 914. "Among other reforms, the PLRA mandates early judicial screening of prisoner complaints and requires prisoners to exhaust prison grievance procedures before filing suit." Jones, 549 U.S. at 202, 127 S. Ct. at 914 (citing 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(a)).

The exhaustion statute provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Proper exhaustion" is required under the PLRA. Jones, 549 U.S. at 217, 127 S. Ct. at 922 (citing to Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules" which, obviously, requires examining the applicable rules

of the Florida Department of Corrections.  <u>Woodford</u>, 548 U.S. at 90, 126 S. Ct. at 2386.

The issue of exhaustion under the PLRA is "treated as a matter in abatement."  <u>Bryant v. Rich</u>, 530 F.3d 1368, 1374 (11th Cir. 2008) (cited in <u>Turner v. Burnside</u>, 541 F.3d 1077, 1082 (11th Cir. 2008)).  Such a "defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter."  <u>Bryant</u>, 530 F.3d at 1374 (cited in <u>Turner</u>, 541 F.3d at 1082).  Thus, ruling on a "motion to dismiss for failure to exhaust administrative remedies is a two-step process."  <u>Turner</u>, 541 F.3d at 1082 (citation omitted).  "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true."  *Id.*  "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed."  *Id.*  (citing to <u>Bryant</u>, 530 F.3d at 1373-74).  "If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion."  <u>Turner</u>, 541 F.3d at 1082

(citing <u>Bryant</u>, 530 F.3d at 1373–74, 1376).[5]  The burden of proof for evaluating an exhaustion defense rests with the defendant.  <u>Jones</u>, 549 U.S. 199, 127 S.Ct. 910, 921, 166 L.Ed.2d 798 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); <u>Turner</u>, 541 F.3d at 1082-83.

Defendant Rudd argues that Plaintiff's claim concerning the use of force must be dismissed as unexhausted,[6] even though Plaintiff properly exhausted his claim concerning the conditions of his confinement on strip.  ECF No. 30 at 2.  It is well established that a Court should dismiss unexhausted claims and proceeded with the exhausted ones.  <u>Jones</u>, 549 U.S. at 224, 127 S. Ct. at 926.

---

[5] "Where exhaustion . . . is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record."  <u>Bryant</u>, 530 F.3d at 1376.

[6] Plaintiff has argued that Defendant's exhaustion defense is untimely and should not be considered.  ECF No. 37 at 2.  That argument is factually incorrect.  Defendant was required to either appropriately support the exhaustion defense or withdraw it by March 31, 2023.  ECF No. 29.  Defendant timely raised the defense in the motion filed on March 31, 2023.  ECF No. 31.

Defendant Rudd has filed copies of Plaintiff's grievances, ECF No. 31, which have been reviewed.  Plaintiff submitted an informal grievance dated September 22, 2020, and said that he had a sheet around his neck when Defendant Rudd came to his cell door.  ECF No. 31-1.  Plaintiff told the Defendant he did not want to live anymore, and Defendant threatened to "gas" him if he didn't "get down off the sink."  *Id.*  Plaintiff said he complied and was escorted to a cell where he was examined by the nurse and then placed on strip.  *Id.*  He complained of no sheets or blanket and being cold.  ECF No. 31-1 at 2.  The informal grievance was denied.  ECF No. 31-1 at 1.

Plaintiff filed a formal grievance to the warden which complained of being placed on strip, being cold, and the deprivation of property.  ECF No. 31-2 at 4.  That grievance was denied.  ECF No. 31-2 at 3.

Plaintiff then filed a grievance appeal to the Secretary's Office concerning that incident.  ECF No. 31-2.  His appeal was also denied.  ECF No. 31-2 at 1.

Plaintiff also filed a second informal grievance on September 23, 2020.  ECF No. 31-3.  Plaintiff again complained that Defendant Rudd threatened to use OC spray and that he was "placed on Strip Status."  *Id.*

He complained that an officer was not placed in front of his cell and that 15 minute checks were not performed.  *Id.*  He requested security cameras "be saved for civil court."  *Id.*  The grievance was found to be "in non-compliance" with the Rules because asking questions is not a proper grievance.  *Id.*  Thus, that grievance was "returned without action" and Plaintiff was instructed to use an Inmate Request Form to the appropriate staff member to process.  *Id.*

In support of the motion to dismiss, Defendant Rudd also served a request for admissions on Plaintiff.  ECF No. 31-4 at 1.  Defendant Rudd asked Plaintiff to admit that his grievance "did not allege that Officer Joseph Rudd physically assaulted" him.  *Id.* at 5.  Plaintiff checked the box and admitted the truth of that statement.  *Id.*  Plaintiff then included an explanation for his answer stating that he "didn't feel it's [sic] was necessary since" he filed a grievance about the strip cell incident.  *Id.*

Defendant Rudd has demonstrated that Plaintiff did not specifically raise the issue of the alleged use of force with the Department in the grievance process.  Plaintiff does not dispute that assertion; rather, he contends it was unnecessary because he had already filed a complaint challenging his placement on strip.

Case No. 4:22cv283-WS-MAF

In <u>Jones v. Bock</u>, the Supreme Court considered "the level of detail required in a grievance to put the prison and individual officials on notice of the claim."  <u>Jones</u>, 549 U.S. at 205, 127 S. Ct. at 915.  The answer to that question lies in the applicable grievance procedures of a particular State. The <u>Jones</u> Court looked to the "Policy Directive" as set forth by the Michigan Department of Corrections.  549 U.S. at 206, 127 S. Ct. at 916. That Directive described what issues were grievable and contained instructions for filing and processing grievances.  549 U.S. at 206–07, 127 S. Ct. at 916.

In Florida, as noted by Defendant Rudd, *see* ECF No. 30 at 2, "[t]he purpose of the grievance procedure is to provide an inmate with a channel for the administrative settlement of a grievance."  FLA. ADMIN. CODE R. 33-103.001(1).  A "grievance" is a "written complaint or petition, either informal or formal, by an inmate concerning an incident or condition within an institution, facility, or the Department which affects the inmate complainant personally."  FLA. ADMIN. CODE R. 33-103.002(6).  The Department's Rules generally require an inmate to complete a three-step process; that is, he must file an informal grievance, a formal grievance, and a grievance appeal.

Rule 33-103.005(2) describes what must be included in an informal

grievance.  An inmate must "use Form DC6-236, Inmate Request," and

"check the appropriate box indicating to whom he is submitting the informal

grievance."  FLA. ADMIN. CODE R. 33-103.005(2)(a).  The inmate must

"complete the other sections of the heading;" including checking the box "to

indicate that Form DC6-236 is being used as an 'Informal Grievance.'" FLA.

ADMIN. CODE R. 33-103.005(2)(b).  The Rule states the following five

requirements for submitting an informal grievance: (1) the form must be

legible, (2) included facts must be "accurately stated," (3) "only one issue or

complaint is addressed," (4) the "grievance narrative" must be limited to

Form DC6-236 with "only two additional pages of narrative" allowed; (5) the

inmate must "sign and date the form and write in his Department of

Corrections number and forward the informal grievance to the designated

staff person."  FLA. ADMIN. CODE R. 33-103.005(2)(b)2.  The Rule specifies

that "[t]he act of asking questions or seeking information, guidance, or

assistance is not considered to be a grievance."  FLA. ADMIN. CODE R. 33-

103.005(2)(b)1.

Defendant Rudd asserts that Plaintiff's allegation against him for the

use of excessive force allegedly occurred after Plaintiff was escorted back

to his cell.  ECF No. 30 at 5.  Defendant contends it is a separate issue

from the conditions of confinement issue, and because Plaintiff's grievance

failed to alert prison officials to the alleged physical abuse, the claim is not

exhausted.  *Id.* at 10.

Plaintiff has not specifically addressed Defendant's argument.

Instead, Plaintiff contends that the exhaustion defense should be denied

because administrative remedies were not available to him.  ECF No. 35 at

3.  Plaintiff argued - but did not submit any exhibits to support his

contention - that prison officials failed to respond to his formal grievance

appeal.  *Id.*  The record shows that argument is not true and, moreover, it

would not be legally correct.  First, Defendant's evidence reveals that

Plaintiff submitted a formal grievance appeal on October 5, 2020.  ECF No.

31-2 at 4.   That grievance was denied on October 19, 2020.  ECF No. 31-2

at 3.  A response was provided which enabled Plaintiff to proceed to the

third step of the grievance process and file an appeal to the Secretary's

Office.

Second, even if a response was not provided to his grievance, such a

failure would not mean that the grievance process was unavailable.  The

Rules require a response to a formal grievance "be provided to the inmate

within 20 calendar days of receipt."  FLA. ADMIN. CODE R. 33-103.006(6).

An inmate is specifically allowed to proceed to the next step in the process

if the time for providing a response expires.  The Rule states that

"expiration of a time limit at any step in the process shall entitle the

complainant to proceed to the next step of the grievance process."  FLA.

ADMIN. CODE R. 33-103.011(4).  "If this occurs, the complainant must

clearly indicate this fact when filing at the next step."  *Id.*  Thus, Plaintiff has

not demonstrated that the process was unavailable to him.

The Court agrees with Defendant Rudd that Plaintiff's claim of

excessive force is a separate claim that is not exhausted.  It is clearly a

separate claim from the Eighth Amendment's "deliberate indifference" claim

which is why Plaintiff alleged it as a separate claim against Defendant

Rudd.  *See* ECF No. 8 at 10.  Plaintiff did not raise it in the grievance

process but, under the Department's Rules, it should have been raised in a

separate grievance because the Rules state that "only one issue or

complaint is" to be addressed in a grievance.  Plaintiff did not do so.

Like cases under the PLRA, employment discrimination cases filed

under Title VII also include an exhaustion requirement - an aggrieved

employee must first file a charge of discrimination.  Courts have held that a

"complaint is limited by the scope of the EEOC investigation which can

reasonably be expected to grow out of the charge of discrimination."

Gregory v. Georgia Dep't of Hum. Res., 355 F.3d 1277, 1280 (11th Cir.

2004).  If this were such a case, an investigation into the conditions of

Plaintiff's confinement on "strip" would not have included a use of force

which preceded the taking of property from his cell.  A use of force claim

would not be expected to come out of a conditions of confinement

investigation.  That is especially true here because Plaintiff alleged that

Nurse Helmlinger ordered that he be placed on strip, not Defendant Rudd.

In a prior case in this Court, District Judge Robert Hinkle considered

an argument that the prisoner's claim of discrimination based on

homosexuality must be dismissed because it was not included in

grievances he filed about the taking of his contact lenses.  Goldsmith v.

White, 357 F. Supp. 2d 1336, 1339 (N.D. Fla. 2005).  Judge Hinkle noted

that the Department's Rules mandate "no level of detail at all" in a

grievance, "requiring only that whatever facts are stated must be true."

Goldsmith, 357 F. Supp. 2d at 1339.   Plaintiff's omission of any reference

to his homosexuality as the basis for removing his contact lenses was held

to be fatal to his discrimination claim.  *Id.*  Judge Hinkle concluded that

Case No. 4:22cv283-WS-MAF

"there is undoubtedly a threshold level of information an inmate must provide in the administrative process in order to meet the federal exhaustion requirement."  357 F. Supp. 2d at 1339.  Enough information must be provided "to allow prison officials to investigate the inmate's real complaint . . . ."  *Id.*  Here, Plaintiff did not provide enough information about Defendant Rudd's alleged conduct so as to fulfill the purpose of the exhaustion requirement.  Therefore, the use of force claim must be dismissed without prejudice because it is unexhausted.

## ORDER ON APPOINTMENT OF COUNSEL

Accordingly, it is **ORDERED** that Plaintiff's motion for the appointment of counsel, ECF No. 36, is **DENIED**.

## RECOMMENDATION

It is respectfully **RECOMMENDED** that Defendant Helmlinger's motion to dismiss, ECF No. 19, be **GRANTED** because Plaintiff's amended complaint, ECF No. 8, fails to state a claim upon which relief may be granted against her.  It is also **RECOMMENDED** that Defendant Rudd's motion to dismiss, ECF No. 30, be **GRANTED** because Plaintiff's amended complaint, ECF No. 8, fails to state a claim upon which relief may be

granted as to the deliberate indifference claim, and the excessive force claim should be **DISMISSED** without prejudice because it is unexhausted as required by 42 U.S.C. § 1997e(a).

**IN CHAMBERS** at Tallahassee, Florida, on May 24, 2023.


S/    Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**



## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1; 28 U.S.C. § 636.**